1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9  Amanda Rae Sawyer,                        No. CV-20-08269-PCT-DGC

10           Plaintiff,                      **ORDER**

11  v.

12  Commissioner    of    Social    Security
   Administration,
13
                 Defendant.
14

15

16        Plaintiff Amanda Sawyer seeks review under 42 U.S.C. § 405(g) of the final

17  decision of the Commissioner of Social Security, which denied her disability insurance

18  benefits under §§ 216(i) and 223(d) of the Social Security Act.   For the following

19  reasons, the Court will affirm the decision of the Administrative Law Judge ("ALJ").

20  **I.    Background.**

21        Plaintiff is a 48-year-old woman with a college education.  A.R. 54, 231.[1]  She has

22  worked at various medium skilled and unskilled jobs, including fast food cook and

23  packer.   A.R. 669.   Plaintiff applied for disability benefits on September 23, 2013,

24  alleging disability beginning October 1, 2011.  A.R. 11.  Plaintiff later amended her claim

25  to allege disability beginning on September 1, 2013.  A.R. 782.  Plaintiff alleges that she

26

27

28        [1] "A.R." refers to the administrative record in this case.  Where possible, the Court
   will cite to administrative record page numbers rather than exhibit numbers.

1    is unable to work due to her obesity, fibromyalgia, connective tissue disease, and edema.

2    Doc. 17 at 3, A.R. 659. [2]

3         Plaintiff's disability claim has an extensive procedural history including three

4    administrative hearings, three unfavorable decisions by two ALJs, and two reversals.  On

5    January 13, 2015, Plaintiff and a vocational expert ("VE") appeared and testified at a

6    hearing before ALJ Randolph Schum.  A.R. 30-53.  On May 15, 2015, ALJ Schum issued

7    an unfavorable decision finding Plaintiff not disabled within the meaning of the Social

8    Security Act.  A.R. 8-29.  On June 24, 2015, the Appeals Council denied review of ALJ

9    Schum's decision.  A.R. 1-6.  Plaintiff pursued an appeal before this Court, and the ALJ's

10   decision was reversed and remanded in *Sawyer v. Colvin*, No. CV-15-08129-PCT-JJT,

11   2016 WL 3563664 (D. Ariz. July 1, 2016).  The court held that the ALJ had erred by not

12   addressing a 2015 fatigue questionnaire completed by treating nurse practitioner Ruth

13   Fowler.  *Id.* at *5-6.  The court also found that while the ALJ provided a clear and

14   convincing reason to discount Plaintiff's symptom testimony by citing her admissions

15   about her daily activities, the frequency of those activities did not suggest Plaintiff was

16   able to work full time.  *Id.* at *6.  The court further found that the following reasons given

17   by the ALJ for discounting Plaintiff's symptom testimony were not clear or convincing:

18   Plaintiff's pain was sometimes less intense with the use of medication, the objective

19   medical evidence failed to support the severity of her systems where the ALJ did not

20   explain how the evidence contradicted her testimony, and a misreading of one of

21   Plaintiff's ANA factor tests.  *Id.* at *6-7.

22        On December 12, 2016, Plaintiff and a VE appeared at a hearing before ALJ

23   Patricia Bucci.  A.R. 708-41.  ALJ Bucci issued an unfavorable decision, finding Plaintiff

24   not disabled within the meaning of the Social Security Act, on May 16, 2017.  A.R. 779-

25

26

27   _____

      [2] Plaintiff, at the administrative level, also alleged diabetes, hyperlipidemia,
28   polyarthritis, osteoarthritis, hypertension, carpal tunnel, and depression.  *See* A.R. 559-
     60.  The ALJ, however, found that these conditions were non-severe, and Plaintiff does
     not appeal that finding.

1    802.   The Appeals Council vacated ALJ Bucci's decision, finding that she had not

2    adequately evaluated the opinions of two state-retained physicians.  A.R. 805-06.

3         In her third hearing, Plaintiff and a VE appeared before ALJ Bucci on July 10,

4    2019.  A.R. 683-705.  On August 8, 2019, ALJ Bucci issued the third unfavorable

5    decision, again finding Plaintiff not disabled within the meaning of the Social Security

6    Act.  A.R. 653-81.  ALJ Bucci's decision became the final decision when the Appeals

7    Council denied review on August 16, 2020.  A.R. 646-52.  Plaintiff now appeals ALJ

8    Bucci's August 2019 decision.[3]

9    **II.    Legal Standard.**

10        The Court reviews only those issues raised by the party challenging the ALJ's

11   decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may set

12   aside the Commissioner's disability determination if it is not supported by substantial

13   evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

14   Substantial evidence is more than a scintilla, less than a preponderance, and relevant

15   evidence that a reasonable person might accept as adequate to support a conclusion

16   considering the whole record.  *Id.*  The Court must consider the whole record and may

17   not affirm simply by isolating a "specific quantum of supporting evidence."  *Id.* (internal

18   citations and quotation marks omitted).  As a general rule, "[w]here the evidence is

19   susceptible to more than one rational interpretation, one of which supports the ALJ's

20   decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954

21   (9th Cir. 2002) (citations omitted).  The ALJ is responsible for resolving conflicts in

22   medical testimony, determining credibility, and resolving ambiguities.  *Andrews v.*

23   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  In reviewing the ALJ's reasoning, the Court

24   is "not deprived of [its] faculties for drawing specific and legitimate inferences from the

25   ALJ's opinion."  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

26   / / /

27

28        [3] Because this appeal deals only with the August 2019 decision, all references to the ALJ's decision from here forward, unless otherwise noted, refer to ALJ Bucci's August 2019 decision.

1    **III.    The ALJ's Sequential Evaluation Process.**

2          Whether a claimant is disabled is determined using a five-step evaluation process.

3    The claimant must show that (1) she is not currently working, (2) she has a severe

4    impairment, and (3) her impairment meets or equals a listed impairment or (4) her

5    residual functional capacity ("RFC") precludes her from performing past work.  If the

6    claimant meets her burden at step three, she is presumed disabled and the analysis ends.

7    If the claimant meets her burden at step four, the Commissioner must show at the fifth

8    step that the claimant is able to perform other work given her RFC, age, education, and

9    work experience.  20 C.F.R. § 416.920(a)(4)(i)-(v); *see Tackett v. Apfel*, 180 F.3d 1094,

10    1098 (9th Cir. 1999).

11          At step one, the ALJ found that Plaintiff met the insured status requirements of the

12    Social Security Act through December 31, 2015, and that she had not engaged in

13    substantial gainful activity since September 1, 2013.  A.R. 659.  At step two, the ALJ

14    found that Plaintiff has the following severe impairments: obesity, fibromyalgia,

15    connective tissue disease, and edema.  *Id.*  The ALJ acknowledged that the record

16    contained evidence of Plaintiff's diabetes, hyperlipidemia, polyarthritis, osteoarthritis,

17    hypertension, history of carpal tunnel syndrome with carpal tunnel release surgery, and

18    depression, but found that they were not severe impairments.  A.R. 659-60.  At step three,

19    the ALJ determined that Plaintiff did not have an impairment or combination of

20    impairments that met or medically equaled a listed impairment.  A.R. 661.  At step four,

21    the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20

22    C.F.R. §§ 404.1567(a) and 416.967(a),[4] except she can frequently push and pull with her

23    upper extremities; frequently operate foot controls bilaterally; never climb ladders, ropes,

24    or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, crouch,

25    _____

26          [4] Regulations define "sedentary work" as work that involves lifting no more than
10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers,
27    and small tools.  Although a sedentary job is defined as one which involves sitting, a
certain amount of walking and standing is often necessary in carrying out job duties.
28    Jobs are sedentary if walking and standing are required occasionally and other sedentary
criteria are met.  20 C.F.R. §§ 404.1567, 416.967.

kneel, and crawl; requires a handheld assistive device at all times when standing; frequently handle and finger bilaterally; have no more than occasional exposure to non-weather related extreme cold or extreme heat; and have no exposure to dangerous machinery with moving mechanical parts or unprotected heights.  A.R. 662.  The ALJ further concluded that Plaintiff could not perform her past relevant work as a fast food cook or a packer.  A.R. 669.  At step five, the ALJ determined, given her RFC, age, education, and work experience, that Plaintiff could perform other work, including the representative occupations of food and beverage order clerk, addressing clerk, and document preparer.  A.R. 670.  The ALJ found that these jobs existed in significant numbers in the national economy and Plaintiff was not disabled within the meaning of the Social Security Act from September 1, 2013, through August 8, 2019.  A.R. 670-71.

**IV.   Discussion.**

Plaintiff argues that the ALJ committed materially harmful error by (1) rejecting assessments from Plaintiff's treating Nurse Practitioner without germane reasons relevant to her opinion based on substantial evidence in the record as a whole; and (2) rejecting Plaintiff's symptom testimony without specific, clear, and convincing reasons supported by substantial evidence in record as a whole.  Doc. 17 at 1-2.

**A.   Nurse Practitioner Fowler.**

Ruth Elaine Fowler, BC-FNP, is a nurse practitioner ("NP") who completed three check-box forms relating to Plaintiff's disability claim.  The ALJ gave each of the opinions "little weight."  A.R. 667, 669.  In the first form, dated October 28, 2016, (the "2016 Form") NP Fowler opined that due to severe pain and fatigue Plaintiff could continuously sit for 30 minutes at a time for up to 3 hours in an 8-hour workday; could continuously stand or walk for 15 minutes at a time for up to 2 hours or less in an 8-hour workday; could lift or carry up to 5 pounds occasionally (33% of workday) and 6-100 pounds rarely (0-5% of workday); could stoop, squat, crawl, climb, or reach rarely; could rarely use either of her hands to handle, grip or grasp, push or pull controls, or for fingering and fine manipulation; could not use either foot for repetitive movements such

as pushing leg controls; and was totally restricted from activities involving unprotected heights, being around machinery, occupational driving, exposure to dust, fumes, and gases, and exposure to marked changes in temperature or humidity.  A.R. 1165-67.  NP Fowler indicated, by checking boxes, that her opinions were based on information in her own medical records, information in records provided by outside sources, clinical observations, lab and other diagnostics, and her own knowledge of the disease or disorders presented, their nature, and course.  A.R. 1167.

In NP Fowler's second form, dated May 2, 2018 (the "2018 Form"), she opined that as the result of severe pain and fatigue Plaintiff could continuously sit for one hour at a time for up to 6 hours in an 8-hour workday; could continuously stand or walk for 15 minutes at a time for up to 2 hours or less in an 8-hour workday; could lift or carry up to 5 pounds occasionally and 6-100 pounds rarely; could rarely stoop, squat, climb, or reach; could occasionally crawl; could use either of her hands occasionally for handling, gripping, or grasping but only rarely for pushing or pulling of controls or fingering and fine manipulation; could use either, but not both, of her feet for repetitive movements such as pushing leg controls; was totally restricted from activities involving exposure to dust, fumes, gases, or marked changes in temperature or humidity; and was mildly restricted from activities involving unprotected heights, being around moving machinery, and occupational driving.  A.R. 1214-16.  NP Fowler indicated, by checking boxes, that her opinions were based on information in her own medical records, information in records provided by outside sources, and clinical observations, but not on lab and other diagnostics or her own knowledge of the disease or disorders presented, their nature, and course.  A.R. 1216.

NP Fowler also filled out a one-page check box form entitled "Fatigue Questionnaire for Treating Physician" on January 28, 2015 (the "2015 Fatigue Questionnaire").  A.R. 630.[5]   In the Fatigue Questionnaire, NP Fowler opined that

[5] Dr. Maurice Parry, D.O., filled out an earlier fatigue questionnaire and co-signed the 2015 Fatigue Questionnaire, but Plaintiff concedes that it is not clear based on the record what role, if any, Dr. Parry played in treating Plaintiff's medical conditions and that "his opinions are irrelevant to this appeal."  Doc. 17 at 10 n.6.  The Court

1   Plaintiff's fatigue would cause moderate impairments (10-14% off task) to her ability to
2   carry out short, simple instructions and to interact appropriately with the public, co-
3   workers or supervisors; marked impairments (15% off task) to her ability to understand
4   and remember short and simple or detailed instructions; and extreme impairments
5   (greater than 15% off task) to her ability to respond appropriately to work pressures in a
6   usual work setting.   *Id.*   NP Fowler also opined that Plaintiff would be markedly
7   distracted from tasks by malaise or muscle pain.   *Id.*   In total, NP Fowler indicated that
8   Plaintiff would be off task because of her fatigue for 5 hours of an 8-hour workday.

9   The Social Security Regulations differentiate between "acceptable" medical
10  sources, which include licensed physicians, psychologists, optometrists, and podiatrists,
11  and "other" medical sources, which include nurse practitioners, physicians' assistants,
12  and public and private social welfare agency personnel.   20 C.F.R. § 404.1527(b), (f);
13  SSR 06-03p.   An ALJ may discount "other" sources by providing "germane" reasons.
14  *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017).   The Ninth Circuit has found it
15  sufficient if an "ALJ at least noted arguably germane reasons for dismissing ["other"
16  source] testimony, even if [she] did not clearly link [her] determination to those reasons."
17  *Lewis*, 236 F.3d at 512.   Germane reasons will be legally sufficient, however, only if they
18  are supported by substantial evidence in the record.   *See Smith v. Berryhill*, 742 F. App'x
19  253, 256 (9th Cir. July 20, 2018); *Hahn v. Berryhill*, 722 F. App'x 602, 604 (9th Cir.
20  2017); *Belcher v. Berryhill*, 707 F. App'x 439, 440-41 (9th Cir. 2017).

21  **1.    The 2016 and 2018 Forms.**

22  The ALJ gave three reasons for giving the 2016 and 2018 Forms little weight:
23  (1) they were inconsistent with the medical evidence of record; (2) they were in checklist
24  format and gave no specific medical support for their conclusions; and (3) the evidence
25  suggested that NP Fowler relied heavily on Plaintiff's subjective complaints when
26  completing the Forms.   A.R. 667-68.

27
28  accordingly will consider the 2015 Fatigue Questionnaire and treat it as the opinion of
    only NP Fowler.   It will be governed by the germane-reasons standard applicable to
    "other" sources.

1

###### a.      First Reason.

2        The ALJ's first reason was that the 2016 and 2018 Forms were "inconsistent with

3  the longitudinal medical evidence of record, including her own observations, showing

4  that despite her conditions, [Plaintiff] generally has a full range of motion in her

5  musculoskeletal system, normal strength in her upper and lower extremities, normal

6  neurological functioning and reflexes, [and] no gait abnormalities." A.R. 667.  The ALJ

7  determined that the evidence "does not support such restrictive limitations" as were

8  assessed in the Forms.  *Id.*

9        Plaintiff argues that this was not a germane reason because the ALJ "did not

10  explain, and was not qualified to explain, how these negative findings would be a basis to

11  impugn the severity of [Plaintiff's] impairments or any specific assessed limitations."

12  Doc. 17 at 15.   Plaintiff argues that the medical evidence – including findings of

13  tenderness with palpation of Plaintiff's joints, reduced range of motion, abnormal motor

14  strength and edema as well as trial of medications for connective tissue disorders and

15  fibromyalgia – does support NP Fowler's assessed limitations.  *Id.* at 16-17.

16        Inconsistency with the medical evidence, so long as supported by substantial

17  evidence in the record, is a germane reason for an ALJ to discredit opinion evidence.

18  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  In reviewing the 16 exhibits

19  cited by the ALJ, as well as other exhibits in the record, the Court cannot conclude that

20  the ALJ's interpretation of the record was irrational.[6]  At most, the medical records are

21  mixed, on some occasions showing findings of tenderness and reduced range of motion,

22  *see* A.R. 1170, 1320, 1323, 1328, 1337, 1346, 1350, 1353, 1367, edema, *see* A.R. 1334,

23  1350, 1356, diminished motor strength, *see* A.R. 1350, and limited ambulation, *see* A.R.

24  1349, 1362-63, but on many more occasions no tenderness or range of motion limitations,

25  *see* A.R. 1309, 1312, 1316, 1330, 1334, 1343, 1356, no edema, *see* A.R. 1309, 1312,

26

27        ─────────────────
           [6] Plaintiff correctly notes that several of the ALJ's citations are to medical records
28  that predate Plaintiff's amended alleged date of disability onset.  Doc. 17 at 15 n.11.  The
     Court accordingly did not consider Exhibits 5F (A.R. 406-40) or 15F (A.R. 522-72),
     which contain records predating the claimed onset date of September 1, 2013.

1316, 1320, 1323, 1328, 1330, 1337, 1343, 1346, 1353, normal motor strength, *see* A.R. 1309, 1312, 1316, 1320, 1323, 1328, 1330, 1334, 1337, 1343, 1346, 1353, 1356, and normal ambulation and gait, *see* A.R. 1308-09, 1312, 1315-16, 1319-20, 1323, 1328, 1330, 1333-34, 1336-37, 1343, 1346-47, 1353, 1356.

Medical records documenting Plaintiff's visits with NP Fowler on the dates that the 2016 and 2018 Forms were filled out likewise show mostly normal physical examinations. An exam done on the same day as the 2016 Form revealed Plaintiff's tenderness and limited range of motion, but also her normal ambulation and gait, normal tone and motor strength, and lack of edema. A.R. 1174-76. And this record was the first time in months that even tenderness and limited range of motion were observed by NP Fowler. *See* A.R. 1179, 1182, 1184, 1186 (documenting visits in months leading up to the 2016 Form date where no tenderness or range of motion limitations, no edema, normal ambulation and gait, and normal muscle tone and motor strength were observed). Records of Plaintiff's visit on the date of the 2018 Form similarly show Plaintiff's tenderness and range of motion limitations, but no edema, normal ambulation and gait, and normal muscle tone and motor strength. A.R. 1320-25. When combined with the many occasions on which Plaintiff was not significantly limited, as cited above, these findings rationally support the ALJ's assertion that NP Fowler's assessed limitations are inconsistent with the medical evidence. Thus, even though Plaintiff can cite medical evidence to support her position, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas* 278 F.3d. at 954 (citation omitted).

Plaintiff's argument that the ALJ's reasoning was insufficient because she failed to explain how the negative findings would be a basis to impugn NP Fowler's assessed limitations is unpersuasive. As an initial matter, the cases Plaintiff cites for this argument deal with the deference ALJs must give to medically acceptable treating sources, not "other" sources such as nurse practitioners. *See Leusch v. Berryhill*, 358 F. Supp. 3d 896, 906 (D. Ariz. 2019) (holding that the ALJ had not given a *specific or legitimate* reason to

discount a contradicted treating *physician*'s assessed limitations); *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (same).  "Other" sources like NP Fowler are governed by a different standard and their opinions are not entitled to the same deference as physician opinions.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

What is more, Plaintiff's argument implies that the ALJ acted outside her purview by considering Plaintiff's normal physical examinations – that is, examinations that revealed no tenderness or limitations in her range of motion, normal motor strength, and lack of edema – to be inconsistent with NP Fowler's assessed limitations.  Doc. 17 at 15 ("the ALJ . . . was not qualified to explain, how these negative findings would be a basis to impugn . . . any specific assessed limitations.").  But it is not clear what else in the medical records the ALJ *could* rely on, under Plaintiff's theory, to weigh the medical evidence and opinions, make findings about what the evidence shows, and resolve conflicts and ambiguities in the evidence – activities that are certainly within the ALJ's purview.  20 C.F.R. §§ 404.1520b, 404.1527; *Magallanes*, 881 F.2d at 751; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Indeed, Plaintiff relies on the same types of information in urging that the record *does* support NP Fowler's assessed limitations.  *See* Doc. 17 at 16 ("More importantly, physical examinations provided objective findings consistent and supportive of the treating assessments, including, tenderness to palpation of Sawyer's joints and musculoskeletal system, reduced musculoskeletal motion, abnormal motor strength, and edema at her extremities.").  As discussed above, even when the medical record can rationally be read to support Plaintiff's position, the Court cannot find error where the ALJ's reading is also rational.  The Court finds that the ALJ's determination that the medical evidence failed to support NP Fowler's opinions in the 2016 and 2018 Forms was a germane reason to discount them.

### b.    Second Reason.

The ALJ's second reason for affording NP Fowler's 2016 and 2018 Forms little weight was that they were in checklist format and contained no specific medical support for their conclusions.  A.R. 668.  Plaintiff argues that discrediting an opinion simply

because it is in a checkbox format with no explanations is error.  Doc. 17 at 17.[7]  But the ALJ did not reject NP Fowler's opinions solely because they were provided in this form. The ALJ also noted that NP Fowler did not support her opinion with reference to specific medical support consistent with her assessed limitations, and that the underlying medical record, including NP Fowler's own clinical observations, did not support the assessments. That an opinion by an "other" source does not cite objective medical evidence, does not provide explanations, and is inconsistent with other medical evidence in the record are germane reasons for an ALJ to discount the opinion.  *Hatfield v. Berryhill*, 768 F. App'x 629, 631 (9th Cir. 2019).  Plaintiff argues that NP Fowler's treatment notes do support her opinions.  Doc. 17 at 17.  But as discussed above, the ALJ's interpretation of the medical records was rational.  "[Plaintiff] asks the Court to interpret those notes in a manner more favorable to her.  That the Court cannot do."  *Maha I. v. Comm'r of Soc. Sec.*, No. C19-205-BAT, 2019 WL 5294422, *3 (W.D. Wash. Oct. 18, 2019).  The conclusory and unsupported nature of NP Fowler's opinions was a germane reason for the ALJ to afford them little weight.

### c.  Third Reason.

The final reason the ALJ gave NP Fowler's 2016 Form little weight was because the "evidence suggests the nurse relied heavily on [Plaintiff's] subjective complaints when completing the form."  A.R. 668.  The ALJ noted that Plaintiff testified at the 2016 hearing that NP Fowler asked Plaintiff about her abilities while she was completing the form.  *Id.*; *see also* A.R. 721-22 (transcript of hearing where Plaintiff testified that she was in the room while NP Fowler filled out the forms and that NP Fowler asked Plaintiff the questions off the form as she did so).[8]

---

[7] Plaintiff cites *Smolen v. Chater*, 80 F.3d 1273(9th Cir. 1996), noting that it held that even where a treating physician did not provide comments to support his answers on an assessment form, "the ALJ still could not reject those responses without *clear and convincing reasons* for doing so."  Doc. 17 at 17 (quoting *Smolen*, 80 F.3d at 1288) (emphasis added).  Plaintiff again confuses the level of deference due NP Fowler.  The ALJ is not required to provide clear and convincing reasons for her opinions.

[8] It appears that this reason applies only to the 2016 Form and not the 2018 Form, given the date of the hearing that provided the evidence the ALJ relied upon to make this finding.

Plaintiff argues that this is not a sufficient reason. First, Plaintiff points out that she also testified that NP Fowler did an examination to verify Plaintiff's reported limitations. Doc. 17 at 17 ("'[NP Fowler] would ask me the questions and she would check, you know, my hands and things like that.'") (quoting A.R. 721-22). Second, Plaintiff argues that caselaw has rejected similar ALJ reasoning, but cites only cases involving medically acceptable sources that apply the higher specific-and-legitimate-reasons standard. *See* Doc. 17 at 17-18. The ALJ must provide only germane reasons for rejecting NP Fowler's opinion. Contrary to Plaintiff's assertions, courts in this circuit have held that relying too heavily on subjective complaints is a germane reason to reject "other" source opinions. *See, e.g.*, *Fleming v. Astrue*, 303 F. App'x 546, 549 (9th Cir. 2008) (holding that reliance on the plaintiff's subjective complaints was a germane reason to discount nurse practitioner opinion); *Figueroa v. Astrue*, No. 2:10-cv-01818 KJN, 2011 WL 4084852, *4 (E.D. Cal. Sep. 13, 2011) (finding that reliance on the plaintiff's subjective complaints was a germane reason to discount chiropractor's opinion where the opinion was almost entirely unsupported by medical findings and the form noted plaintiff's subjective complaints).

Plaintiff's reliance on *Cowart v. Acting Commissioner*, No. CV-17-03351-PHX-ESW, 2018 WL 4057612 (D. Ariz. Aug. 27, 2018), is unpersuasive. First, *Cowart* considers an opinion by a physician and applies the specific-and-legitimate-reasons standard. *Id.* at *4. Second, the court in *Cowart* held that reliance on the plaintiff's subjective complaints was not a specific and legitimate reason where there was "no evidence in the record" to suggest that the physician relied on the plaintiff's subjective complaints. *Id.* The record in this case does not lack evidence suggesting that NP Fowler relied primarily on Plaintiff's subjective complaints in reaching the opinions expressed in the 2016 Form. As the ALJ noted, Plaintiff testified that NP Fowler filled out the forms with Plaintiff in the room and asked Plaintiff the questions, eliciting Plaintiff's subjective reports as she completed the forms. A.R. 667-68, 721-22. This is substantial evidence upon which the ALJ could conclude that NP Fowler relied heavily on Plaintiff's

subjective complaints, notwithstanding that NP Fowler may have also confirmed some of Plaintiff's reports, for example, by asking her to pick up a five-pound weight. The ALJ's determination that the underlying medical record, including NP Fowler's own treatment history, did not support her assessed limitations in the 2016 Form also supports the conclusion that the Form was based primarily on Plaintiff's subjective complaints. *Figueroa*, 2011 WL 4084852 at *4 ("[The "other" source's] opinion is almost entirely unsupported by actual medical findings even though such findings are requested in the form he completed; rather, plaintiff's subjective complaints provide the basis for the limitations cited[.]").

NP Fowler's reliance on Plaintiff's subjective complaints was a germane reason to give the 2016 Form little weight.

### 2.    The 2015 Fatigue Questionnaire.

The ALJ gave NP Fowler's 2015 Fatigue Questionnaire little weight because (1) the evidence of record "shows that [Plaintiff] was consistently alert and oriented and shows largely normal mental and psychological functioning, notwithstanding some depressed, anxious moods[;]" and (2) consultive psychological examiner Seven Patrick, Ph.D. found Plaintiff to have generally intact cognitive and psychological functioning. A.R. 669. The ALJ determined that NP Fowler's assessment in the Fatigue Questionnaire was unsupported by these records. *Id.*

Plaintiff argues that the ALJ improperly relied on findings regarding Plaintiff's psychological state because her fatigue was the result of physical, not psychological, impairments. Doc. 17 at 18. Plaintiff cites *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984), for the proposition that the ALJ should not have relied on psychological observations when assessing physical fatigue. But the court in *Gallant* applied the higher clear-and-convincing-reasons standard to reach its conclusion. *See id.* at 1454. Further, *Gallant* did not deal with limitations to the plaintiff's "ability to understand, carry out, and remember instructions," but only with the "ability to respond to customary work pressures." *Id.*. And the ALJ in *Gallant* did not cite any specific medical evidence in

1   making his decision.  *See id.* at 1453 ("the ALJ did not indicate precisely what medical

2   evidence required this decision").

3       In this case, NP Fowler did opine that Plaintiff was unable to understand, carry

4   out, and remember short and simple or detailed instructions as well as being unable to

5   respond appropriately to customary work pressures.  *See* A.R. 630.  Moreover, the ALJ

6   specified medical evidence that supported her decision, unlike the ALJ in *Gallant*.  *See*

7   A.R. 669.  The ALJ appropriately considered psychological observations contained in the

8   record that were inconsistent with NP Fowler's 2015 Fatigue Questionnaire as a germane

9   reason to give it little weight.[9]

10      **B.    Plaintiff's Symptom Testimony.**

11      In evaluating a claimant's symptom testimony, an ALJ must engage in a two-step

12  analysis.  First, the ALJ must determine whether the claimant presented objective medical

13  evidence of an impairment that could reasonably be expected to produce the alleged

14  symptoms.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  The claimant is not

15  required to show that her impairment could reasonably be expected to cause the severity

16  of the symptoms she has alleged, only that it could reasonably have caused some degree

17  of the symptoms.  *Id.*  Second, if there is no evidence of malingering, the ALJ may reject

18  the claimant's symptom testimony only by giving specific, clear, and convincing reasons.

19  *Id.* at 1015.

20      Plaintiff testified about her symptoms at three administrative hearings.  At the first

21  hearing, held on January 13, 2015, Plaintiff testified that she was unable to work due to

22  her neuropathy and lupus.  A.R. 34-35.  She testified to having problems with her grip

23  and numbness in the fingers of her right hand through her elbow, in her feet up to her

24  hips, and in her lower back.  A.R. 38-39.  Plaintiff testified that she had daily headaches,

25  lasting up to six hours on a bad day.  A.R. 39.  She testified to having constant, moderate

26

27      [9] The ALJ also gave the 2015 Fatigue Questionnaire little weight because Plaintiff
    reported largely normal daily activities in March of 2014.  A.R. 669.  Plaintiff
28  acknowledges this reason but makes no argument that it was not germane, *see* Doc. 17 at
    18, and the Court therefore need not review it, *see Lewis*, 236 F.3d at 517 n.13.

pain in her feet, knees, and hands and needing to lay down with her feet up multiple times daily to relieve the pain.  A.R. 40-41.  Plaintiff also testified that she was only able to sit for 10 to 20 minutes in a business-style chair, stand or walk between 5 and 10 minutes with or without her walker, and lift only between 4 and 8 pounds without pain.  A.R. 42-43.  Plaintiff testified that she fell about once per week without her walker.  A.R. 44.  She also indicated that her memory was worsening as a result of her lupus and that her medications made her drowsy and dizzy.  A.R. 45-46.

At the second hearing, held on December 12, 2016, Plaintiff testified that she had made about $8,600 in 2014 by caring for her mother before she died.  A.R. 715-16.  She testified that she drove her mother to doctor's appointments and ensured that she took her medications and ate.  A.R. 716.  Regarding her symptoms, Plaintiff testified that her hands tingled and went numb, that she frequently dropped things, and that sitting was painful along the right side of her body.  A.R. 717.  She testified that she mostly stayed in bed because she had a hard time moving and her daughter helped with cooking, cleaning, and grocery shopping.  A.R.719-20.  Plaintiff also indicated that she would fall asleep for no reason, including once while she was driving.  A.R. 721, 723-24.  Plaintiff testified that she still got headaches daily and that her pain was "really severe . . . about a ten constantly."  A.R. 726.  She testified that she was laying down almost all day to relieve the pain.  *Id.*  Plaintiff testified that she could sit in a business-style chair for only 10 minutes at a time, that she could not stand at all or walk more than a few steps due to pain, and that she sometimes could not lift even 5 pounds.  A.R. 727.  She testified to daily falls, even when using her walker.  A.R. 728.

At the third hearing on July 10, 2019, Plaintiff testified that she could not work as a result of her neuropathy, which caused her to get "pins and needles" in her legs, thighs, and hands.  A.R. 687-88.  She testified that she dropped things, had trouble concentrating, and was constantly tired, and that nothing relieved her pain.  A.R. 688.  She also testified that she was no longer on pain medication.  *Id.*  Plaintiff testified in response to questions by the ALJ that it was sometimes painful to walk and that she spent her days mostly in a

- 15 -

park, due to her homelessness, but would try to walk and stand. A.R. 689. She testified that she used to be able to walk but did not try to find work at that time because she did not have a car. A.R. 690. In response to questions from her attorney, Plaintiff testified to being able to sit, walk, and stand only 5 minutes at a time and being able to lift about 5 pounds. A.R. 692-93. She testified that her pain had worsened and that she fell once a week, but sometimes up to twice daily. A.R. 694. Plaintiff also testified that she got migraine headaches, lasting all day, every couple of days, and that she had to lay in a dark room with a wet washcloth on her head when this happened. A.R. 694-95. Plaintiff testified that she had developed diabetes and, as a result, her feet swelled daily and she could not get relief from the swelling. A.R. 695-96.

The ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. A.R. 663.[10] The ALJ also found, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of the[] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* The ALJ gave three reasons for her determination: (1) inconsistency with the longitudinal medical evidence of record, *id.*; (2) contradictory statements by Plaintiff, *id.* at 665; and (3) Plaintiff's daily activities, *id.*

Because the ALJ found no evidence of malingering, she could discount Plaintiff's testimony only by making "specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – general findings are insufficient." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted); *see Lambert v. Saul*, 980 F.3d 1266, 1277

---

[10] Plaintiff asserts that the ALJ's reference to "alleged symptoms" without elaborating on which symptoms she found could reasonably be expected did not satisfy the ALJ's duty. Doc. 17 at 19-20. It is clear, however, which symptoms the ALJ considered to be reasonably expected. In the paragraph immediately preceding her finding, the ALJ listed the symptoms alleged by Plaintiff, and a fair reading of the document is that those are the symptoms the ALJ found to be reasonably expected. *See* A.R. 662-63.

(9th Cir. 2020) (finding insufficient the ALJ's "boilerplate statement" that the claimant's symptom testimony was "not entirely consistent with the objective medical evidence"). The Court finds that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to discount Plaintiff's testimony.

### 1.    Inconsistency with Medical Evidence.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)); *see Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 16–3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) (explaining that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). An ALJ may rely on contradictory medical evidence to discredit symptom testimony, so long as she "make[s] specific findings justifying [her] decision." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

The ALJ found that the medical evidence does not "fully support" the alleged severity of Plaintiff's symptoms. Plaintiff asserts that the ALJ made this statement and "then provided a discussion of the medical record, but failed to tie-in her characterization of the medical record with any specific symptom testimony." Doc. 17 at 21. The Court does not agree.

Regarding Plaintiff's connective tissue disease, the ALJ found that "despite [Plaintiff's] allegations of substantial fatigue, pain, pins and needles in her legs and feet, multiple examinations showed normal strength in the bilateral lower extremities and bilateral upper extremities, which suggest a significant ability to sit, stand and walk despite her allegations." A.R. 663. In reaching this conclusion, the ALJ discussed

Plaintiff's diagnostic findings and objective clinical evaluations. *See id.* These included x-rays that revealed no joint erosion, stenosis, or nerve root impingement. *Id.* The ALJ also noted that the record detailed only subjective complaints of numbness in Plaintiff's lower extremities and difficulties in gripping and grasping, without any tests confirming these conditions. *Id.* The ALJ also noted that clinical examinations, while occasionally documenting some tenderness and range of motion limitations and once documenting abnormal gait, also contained a finding of "no signs of inflammation" from Plaintiff's connective tissue disease and Plaintiff's denial of swelling. *Id.*

Regarding Plaintiff's edema, the ALJ found that Plaintiff's testimony that her feet continue to swell daily and that she must elevate her legs above her heart not credible. *Id.* at 664. This testimony was at odds with statements in the medical records indicating Plaintiff "walk[ed] a lot every day" in June 2019 and physical examinations in 2019 revealing no edema. *Id.* The ALJ acknowledged some instances where Plaintiff's edema was observed in clinical settings, but indicated that the RFC assessed took her edema into consideration. *Id.*

Finally, the ALJ found Plaintiff's testimony of "neuropathy, pins and needles, and dropping objects with no ability to grip or grasp" not credible. *Id.* The ALJ cited the clinical examinations of Drs. Kunsman and Garrison, two consultive examiners, as well as other portions of the medical record. *Id.* Dr. Kunsman's observations were from May 2012, prior to the alleged disability date of September 1, 2013. *See id.* Dr. Garrison evaluated Plaintiff in March 2015 and observed that she had a "normal gait, could stoop without difficulty, had appropriate balance and could walk on her heels and toes, could pick up and manipulate coins, nuts, and bolts, had normal sensation and functioning in her ulnar, median, and radial nerves, and . . . full strength throughout her upper and lower extremities." *Id.* The ALJ also cited many records of Plaintiff's treating providers that noted Plaintiff's full range of motion, normal strength, normal neurological functioning, and lack of gait abnormalities. *Id.*

1     In each instance, the ALJ made findings about what symptom testimony she found

2     to be contradicted by evidence in the medical record.  While the medical record can be

3     read more favorably to Plaintiff, the ALJ's reading is rational and constitutes substantial

4     evidence on which to base her findings.  Because the Court finds below that the ALJ

5     identified other valid, clear and convincing reasons to discredit Plaintiff's testimony,

6     inconsistency with the medical record was not the sole basis she did so.  *See Burnell v.*

7     *Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (inconsistency with medical records is not,

8     standing alone, a clear and convincing reason to discredit a plaintiff's testimony).  The

9     Court accordingly finds that the ALJ stated clear and convincing reasons, based on

10    inconsistency in the medical records, to discredit Plaintiff's symptom testimony.

11                    **2.     Contradictory Statements.**

12          The ALJ also found several statements by Plaintiff to be inconsistent with her

13    symptom testimony.  First, the ALJ found Plaintiff's reports of walking all day and losing

14    weight to be inconsistent with her testimony that she could walk only for five minutes at

15    a time.  *Id.* at 665.  Second, the ALJ found Plaintiff's testimony that she sits in a park all

16    day to be inconsistent with her testimony that she could sit for only five minutes at a

17    time, must elevate her legs above her heart, and must stay in a dark room twice per week.

18    *Id.*  Finally, the ALJ found that Plaintiff's ability to take care of her mother prior to her

19    death, including helping her with meals and driving her to appointments, was inconsistent

20    with the level of disability to which she testified.  *Id.*

21          Plaintiff addresses only the first inconsistency, arguing that inconsistencies in her

22    reports do not necessarily mean that they were inaccurate.  Doc. 17 at 23.[11]  Plaintiff

23    points out that the report of walking all day was made in the context of a visit discussing

24    her prediabetes and "did not confirm frequency or length of any rest periods while she

25    walked."  *Id.*  Plaintiff argues that the ALJ's reasoning was deficient because she did not

26    find that Plaintiff spent a substantial part of a typical day engaged in the contradictory

27

28    [11] Because Plaintiff does not make arguments specifically regarding the other two inconsistencies, the Court does not discuss them.

activities and "neither showed that Sawyer's routine activities would transfer to a work environment, nor did the ALJ show that Sawyer's activities were at odds with her reported symptoms."  *Id.*  But the ALJ need not have found that Plaintiff engaged in walking for a substantial part of a typical day because she found that Plaintiff's report of walking a lot contradicted her testimony.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (detailing two grounds for using daily activities as basis of adverse credibility determination: (1) contradiction of other testimony and (2) evidence that claimant spends a substantial part of the day engaged in pursuits involving the performance of physical functions transferrable to a work setting).

And while it may be true that the record the ALJ cited is ambiguous on the length or frequency of Plaintiff's walking, the ALJ is responsible for resolving ambiguities in the evidence.  It was reasonable for the ALJ to conclude that Plaintiff's reports of walking "a lot every day" – enough to lose 63 pounds in one month, A.R. 1363 – were inconsistent with her testimony that she can only walk 5 minutes at a time.  The Court finds that the ALJ stated clear and convincing reasons to discount Plaintiff's testimony.

### 3.    Daily Activities.

The ALJ also found that Plaintiff's reported daily activities, including going shopping, preparing lunch and dinner, managing her personal care and hygiene, and performing household chores, were inconsistent with her symptom testimony.  A.R. 665. Plaintiff does not contest the ALJ's characterization of her reported daily activities, but argues that they are not a clear and convincing reason to discount her symptom testimony because the ALJ did not find that the activities were transferrable to a job setting or that Plaintiff spent a substantial portion of a typical day engaging in those activities.  Doc. 17 at 22-23.

But, like above, the ALJ was not required to make findings of transferability because she did not reason that Plaintiff's activities showed an ability to work.  Rather, she found that the activities were not supportive of Plaintiff's "allegations of disabling neuropathy, swelling, and difficulties sitting, standing, walking, and lifting."  A.R. 665.

The ALJ did not err in this regard, particularly given her finding that Plaintiff had only an RFC to perform sedentary work.  *See Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (the ALJ properly recognized that daily activities "did not suggest Valentine could return to his old job[,]" but "did suggest that [his] later claims about the severity of his limitations were exaggerated"); *Kristin D. G. v. Sau*, No. 5:20-00310 ADS, 2021 WL 2714599, at *7 (C.D. Cal. June 30, 2021) ("Plaintiff argues that none of [her daily] activities show that she can perform full time work.  Plaintiff is mistaken, however. The ALJ cited to Plaintiff's statements in the record of her daily activities to show the inconsistency with her testimony at the Administrative hearing, not her ability to perform full time work.") (citing *Thomas*, 278 F.3d at 958-59).  "Although the evidence of [Plaintiff's] daily activities may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and 'we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'"  *Burch*, 400 F.3d at 680-81 (quoting *Magallanes*, 881 F.2d at 750); *Thomas*, 278 F.3d at 959 (explaining that the ALJ may consider daily activities when weighing the claimant's credibility, and, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing") (citing *Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999)).

**IT IS ORDERED**:

1.     The decision of the Commissioner of Social Security to deny Plaintiff disability insurance benefits is **affirmed**.

2.     The Clerk shall enter judgment accordingly.

Dated this 28th day of December, 2021.

David G. Campbell
Senior United States District Judge

- 21 -